### HARRIS v. HARDRIDGE et al.

(Circuit Court of Appeals, Eighth Circuit. December 2, 1908.)

No. 2,732.

INDIANS (§ 15*)—INDIAN LAND—GRANT BY INDIANS—VALIDITY.

Complainant having purchased and taken possession of lands awarded to an Indian allottee, who was a freedman, and enrolled as a citizen of the Creek Nation, notwithstanding Act Cong. June 28, 1898, c. 517, 30 Stat. 507, declaring that the land should not be transferred by the allottee, nor be liable for his contract obligation, the complainant by such contract in possession did not acquire such a vested right in the land as required observance, or prevented Congress from making its prohibition more effectual, or imposing others, which it did by Act Cong. March 1, 1901, c. 676, 31 Stat. 863, and Act Cong. June 30, 1902, c. 1323, 32 Stat. 503, declaring that lands should not be alienated except with the approval of the Secretary of the Interior, at any time prior to five years from the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ratification of the Creek Agreement, and that any agreement or convey-ance violative of its provisions should be void, not susceptible of ratifica-tion, nor subject to any rule of estoppel.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 15.*]

Appeal from the United States Court of Appeals in the Indian Ter-ritory.

For opinion below, see 104 S. W. 826.

The appellant, James A. Harris, sued Adam M. Hardridge, his wife, and others for the cancellation of a deed from the Hardridges conveying to two of their codefendants a tract of land in the Indian Territory, and for the specific performance of a contract by which the Hardridges agreed to convey the land to appellant. The trial court sustained defendants' demurrer and dismissed the bill. The decree was affirmed by the United States Court of Appeals in the Indian Territory. The bill discloses that Adam M. Hardridge was duly enrolled on the rolls of citizens of the Creek Nation as a freed-man, and as such became entitled to an allotment of 160 acres of land and to receive a deed for the same from the tribal authorities. He had selected the particular 60 acres in controversy as part of his allotment, and was in possession when the contract with appellant was made. There was, first, an oral agreement, September 7, 1900, that when Hardridge received a deed for his allotment he and his wife should convey the 60 acres to appellant and the latter should in turn convey them, as consideration, a certain town lot. Possession of the respective properties was thereupon exchanged. On Oc-tober 28, 1901, the verbal agreement was reduced to writing. October 13, 1902, the Creek Nation, with the approval of the Secretary of the Interior, executed and thereafter delivered to Hardridge a deed conveying his allot-ment, including the 60 acres. On April 22, 1904, Congress removed the restrictions then existing upon the sale of allotted lands by those not of Indian blood, and this included Hardridge; but on May 13, 1904, he and his wife, instead of abiding by the contract with appellant, sold and con-veyed the 60 acres to two of their codefendants. Thereafter appellant ten-dered his deed conveying the town lot, and, it being refused, brought the suit.

Robert F. Blair, for appellant.

Charles G. Watts (De Roos Bailey, on the brief), for appellees.

Before SANBORN and HOOK, Circuit Judges, and PHILIPS, District Judge.

HOOK, Circuit Judge (after stating the facts as above). When the contract which appellant seeks to have specifically performed was made, the land in controversy was subject to the provision of Act June 28, 1898, c. 517, 30 Stat. 507, that it should not be transferred until after full title had been acquired by the allottee, and should not be liable for prior contract obligations. Hardridge, the allottee, who was a freedman enrolled as a citizen of the Creek Nation, did not se-cure full title until October 13, 1902, and in the meantime Congress had further expressed its purpose regarding the lands of the Nation, the tribal title to which was being extinguished by allotment and con-veyance in severalty to its citizens, by providing in Act March 1, 1901, c. 676, 31 Stat. 863, that the lands should not be alienable by allottees or their heirs, except with the approval of the Secretary of the In-terior, at any time before the expiration of five years from the rati-fication of the agreement which the act tendered the Creek National

Council for their action. And Act June 30, 1902, c. 1323, 32 Stat. 503, contained a prohibition similar to that of the act of 1901, and further provided:

"Any agreement or conveyance of any kind or character violative of any of the provisions of this paragraph shall be absolutely void and not susceptible of ratification in any manner, and no rule of estoppel shall ever prevent the assertion of its invalidity."

The appellant contends that the provisions of the acts of Congress passed after the date of his contract are inapplicable. We do not think so. When appellant made his purchase and took possession, he did so in face of the express provision of the act of 1898 that the land should not be transferred by the allottee and should not be liable for his contract obligations. This was an attempt to evade the intent and purpose of the statute, and appellant in so doing did not succeed in fastening upon the property such a vested right as required observance and prevented Congress from making its prohibition more effectual or from imposing others. The purpose of such legislation was to prevent interference with the labors of the administrative commission engaged in the task of extinguishing tribal titles and the allotment of the tribal property in severalty, and to protect a class of persons inexperienced in individual ownership and peculiarly susceptible to imposition. The statutes evince a clear purpose to declare such contracts as that of appellant wholly void, and it certainly was not intended by the subsequent removal of the restrictions to give them vitality so they might be enforced.

The case is not like that of a valid contract to sell land of which the vendor, of contracting capacity, has not title at the time, but afterwards acquires it. Three weeks after the removal of the restrictions the Hardridges conveyed the land in controversy to two of their co-defendants. During that time they incurred no new obligation to appellant, and there was no such ratification of the old one, even if it could have been ratified, as would entitle him to its enforcement in a court of equity. The bare averment that the parties were then performing the contract of sale meant nothing more than that possession remained as theretofore.

The decree is affirmed.